## Com. *v.* Phila. City and Co., Appellants.

*Taxation—Appeal from tax settlement—Practice.*

On an appeal from a tax settlement, the hearing in the common pleas is limited to matters specially set out in the appeal.

*Taxes—Collection—County treasurer—Agency—Act of June 1, 1889.*

Where a county treasurer is required to assess, collect and remit the tax to the state treasurer, as in the act of June 1, 1889, P. L. 420, he is not the agent of the commonwealth, but of the county, until the tax is paid by him to the state treasurer. Nothing relieves the county from liability to the state for the tax but actual payment of it to the state treasurer.

*Interest on personal property tax.*

Where there has been a delay by a county through the misconduct of its treasurer in not paying over to the commonwealth the state personal property tax, the county is not liable for interest on the one third of the fund which it is entitled to receive back from the state.

*Taxation—Attorney general's commissions.*

Where a county treasurer embezzles the state personal property tax paid to him, and a settlement is made by the commonwealth against the county for the amount of the tax, and the neglect of the commonwealth's officers to enforce quarterly returns and payments relates only to a single quarter of the year, and the county officers have had ample opportunity for investigation, the attorney general's commission may be imposed upon the county.

Argued May 31, 1893. Appeal, No. 30, May T., 1893, by defendants, from judgment of C. P. Dauphin Co., June T., 1892, No. 10, for plaintiff, on appeal from tax settlement. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Appeal from tax settlement. Before McPHERSON, J.

The case was tried without a jury, the facts being found by the court as follows:

" 1. On Jan. 20, 1892, the auditor general and state treasurer settled an account against the city and county of Philadelphia for tax on personal property, charging $828,909.36, the amount of said tax for the year 1891, as fixed by the board of revenue commissioners, less the commissions due the county treasurer for collection, crediting certain payments, amounting to $527,241.47, and thus showing a balance in favor of the commonwealth of $301,667.89.

" 2. From this settlement an appeal was duly taken by the city and county of Philadelphia.

" CONCLUSIONS OF LAW.

" Four specifications of objection were filed with this appeal, and to these the case must be confined. It is well settled that no other objections can be heard by this court than those which are thus specified: Porter v. Com., 1 P. & W. 252; Com. v. Porter, 21 Pa. 385; D. L. & W. R. R. v. Com., 66 Pa. 64. In the latter case it was said by Chief Justice THOMPSON, after quoting the defendant's specifications : ' These were the objections filed by the company to the settlement in the auditor general's office, and were the only questions the court below could legally take cognizance of. This is not only so by force of the decisions referred to (Porter v. Com. and Com. v. Porter), but by force of the terms of the act of 1806, which requires that a remedy specially provided by statute shall be strictly followed.'

" Turning, then, to the defendant's specifications, we find that the first two object to the settlement as improperly joining the city and county. It is sometimes a little difficult to know just where the city of Philadelphia ought to end and the county of Philadelphia to begin, but in the case before us we think the separation can be easily and correctly made. With regard to the tax on personal property, the state deals primarily with the counties, and not with the individual taxpayers. Other taxes may be collected under different provisions of law; but as to this tax, the counties are debtors to the state, and must pay their duly levied quota, whether they collect it or not: Schuylkill Co. v. Com., 36 Pa. 524; Com. v. Phila., 9 Cent. R. 215. Cities as such are not liable to the state on this account, and we agree, therefore, that the city was improperly joined in this settlement, and think it should be stricken from the record as a party defendant wherever it may appear.

" The third specification alleges that certain payments were not credited, although made upon the tax in dispute, but no evidence was offered to support this allegation, except as to the first item of $150,000, and for this the defendant has received credit in the finding and opinion filed herewith to No. 303, September term, 1891, Dauphin common pleas.

" [The fourth specification is a general allegation of payment, but assuming it to be sufficient, it was not supported by any

other evidence than that which has been already considered in the opinion just referred to, except by the offer on page 1. This was an attempt to show that the county treasurer had paid to the state $185,000 which actually belonged to the school fund of the city of Philadelphia, on account of indebtedness for mercantile licenses. This was, of course, a misapplication of the money, but the commonwealth's officers did not know the fact, and the commonwealth is not bound to make the correction.] [14] Moreover, this offer seems to ask us to make a fresh misapplication of the money, by taking it from one account in which it ought not to be, and putting it in another account where it is equally out of place.

"All the other offers propose to prove the county treasurer's embezzlement or the misconduct or neglect of the commonwealth's officers, and need not be further considered. These defences were not specified, and are not included in the most liberal construction of the four objections which alone are properly before us.

"After the opinion in this case was written the attorney general consented to the filing of a specification, raising the questions of negligence and embezzlement which we had declined to consider.

"Treating them now, therefore, as properly before the court, we may briefly repeat, with regard to the alleged negligence of the commonwealth's officers, what was said by the Supreme Court in Easton Bank v. Com., 10 Pa. 451: 'The rights of the commonwealth are not liable to be compromised by the nonfeasance of her agents.' In Del. Div. Canal Co. v. Com., 50 Pa. 408, the rule is substantially restated in these words: 'The mistake or misapprehension of these officers could not prejudice the commonwealth;' and it has been followed very recently by Judge SIMONTON, who holds in a case similar to this [the following case] that 'it is a well settled principle of law that the state shall not suffer by the neglect of its officers promptly to perform their duties.'

"[The question before us is not of estoppel but of simple negligence, and it seems clear that neglect by the commonwealth's officers to compel payment could not relieve the county from its prior and continuing duty to pay. The county was bound to pay without being compelled; if it failed in this duty

the commonwealth's officers were bound to compel payment; if they also failed, both were at fault, but the negligence of neither was sufficient excuse for the other. The mere neglect of the commonwealth's officers to perform one duty cannot justify the county in its neglect to perform another and separate duty.

" In our opinion, therefore, both upon reason and authority, the evidence offered upon this subject was irrelevant, and was rightly excluded.

" Equally irrelevant, as we think, was the evidence offered to prove John Bardsley's embezzlement. We assume (as the offers in part require us to assume) that he embezzled the money collected on account of this tax, but it seems to us quite clear that his crime cannot relieve the county. For this particular tax, the county is liable, although it may not collect a dollar from the individual taxpayers, and this liability can only be discharged by payment to the state. As to this tax, the county is not only a collector, but also a debtor. The money which the county collects helps to relieve its own liability, and therefore in a very true sense it was the money of the county, and not the money of the state, which the treasurer embezzled.] [15]

" No doubt the state had a real although indirect interest in it, but the interest of the county was superior and much more direct. This is strikingly shown by the case of Com. v. Phila., 9 Cent. R. 215, which decided that, although the county had collected money expressly as state tax on personal property, nevertheless it might retain it even as against the state, because the money in question was in excess of the quota assessed against the county by the revenue commissioners. In brief, the state looks to the county and the county looks to the taxpayers; the consequence being, that the money collected from individual taxpayers goes into the county treasurer's hands as money of the county in the first instance, and if embezzled there is lost by the county and not by the state."

*Errors assigned* were among others (14, 15) the conclusions of law in brackets, quoting them; (17) entry of above judgment; and (18) as stated in opinion of the Supreme Court.

*M. E. Olmsted* and *Lyman D. Gilbert, John H. Weiss* and

*Charles F. Warwick* with them, for appellant, cited : Phila. v.
Martin, 125 Pa. 583 ; Pennell v. Deffell, 4 De G. M. & G. 372 ;
McLaughlin v. Fulton, 104 Pa. 161 ; Farmers' Bank v. King,
57 Pa. 202 ; McDermott v. Miners' Bank, 100 Pa. 285.

*W. U. Hensel*, attorney general, *Jas. A. Stranahan*, deputy
attorney general, with him, for appellee, cited : Com. v. Wol-
bert, 6 Bin. 292 ; People v. Jansen, 7 John. 332 ; U. S. v. Kirk-
patrick, 9 Wheat. 720 ; U. S. v. Vanzant, 11 Wheat. 184 ;
Com. v. Baldwin, 1 Watts, 55 ; Haehnlen v. Com., 12 Pa. 618 ;
Schuylkill Co. v. Com., 36 Pa. 536 ; Lehigh Co. v. Bartholomew,
148 Pa. 83 ; Easton Bank v. Com., 10 Pa. 451 ; Del. Div. Ca-
nal Co. v. Com., 50 Pa. 408 ; Minor v. Mechanics Bank, 1 Pet.
49 ; Amherst Bank v. Root, 2 Metc. 522 ; Act of June 1, 1889,
P. L. 420 ; Com. v. Phila., 9 Cent. R. 215 ; Mayor of New York
v. Davenport, 92 N. Y. 604.

OPINION BY MR. JUSTICE DEAN, October 2, 1893 :

As required by act of June 1, 1889, the state board of reve-
nue commissioners assessed upon the county of Philadelphia
for the year 1891, a personal property tax of $837,282.18.   The
act of 30th of March, 1811, made it the duty of the auditor
general to settle the accounts between the commonwealth and
counties in these words : " All accounts between the common-
wealth and any person or persons, body politic or corporate,
as well as those with the officers of the revenue, as other per-
sons intrusted with the receipt, or who have or hereafter may
become possessed of public money, also the accounts of all per-
sons having claims on the commonwealth, except as are here-
inafter excepted, shall be examined and adjusted by the auditor
general according to law and equity."

In pursuance of the authority thus conferred, the auditor
general, on the 19th of January, 1892, settled and adjusted
the personal property tax against the city and county of Phila-
delphia for the year 1891, as follows :

Amount of tax,        .      .        $837,282.18
Deduct treasurer's commission,    $8,372.82,    $828,909.36
Paid into state treasury,      .     .      .      .      527,241.47

        Due commonwealth,        .      .      $301,667.89
From this settlement the county appealed to the court of

common pleas of Dauphin county, specifying as objections to the settlement : (1) No settlement of this character against the city and county of Philadelphia was authorized by law, either against them jointly or severally.   (2) The same objection as the first, except reversing the order in which defendants are named as parties.   (3) The settlement did not credit defendant with $447,844.26, which was applicable on the account for said tax.   (4) That if there were any indebtedness to the commonwealth on account of said tax, it had been fully paid, either directly or indirectly, into the state treasury.   (5) That the said tax had been assessed, collected and paid by the county of Philadelphia to John Bardsley, the treasurer of said county, who by law was the agent of the commonwealth to receive the same ; that by the laches, unlawful acts, and negligence of the commonwealth's officers, he was permitted to retain the money in his hands, and by him it was embezzled and lost, and therefore, even if said county was responsible for same when received by Bardsley, it was lost by the negligence of the commonwealth, and the county is relieved from payment.

On hearing of the appeal, under act of 1874, without a jury, the court, holding that the county alone was answerable for the personal property tax, permitted an amendment, striking from the record the city as one of defendants, and this disposed of the first objection.   As to the second, alleging direct payment, there was no evidence, except that $150,000 had been paid the 18th January, 1891, on the personal property tax for the preceding year, and this had properly been credited to the county on another suit by the commonwealth for that tax.   The fourth objection was only supported by evidence tending to show, the county treasurer had applied on other indebtedness of his to the commonwealth $185,000 of the school fund of the city of Philadelphia.   But, as there was no evidence the commonwealth's officer knew from whence the money came, and, as to credit it in this suit on the personal tax account would only be a second misappropriation of the school fund, the court refused to allow such credit.

Objections to the settlement not specified in the appeal were raised, but the court, on unquestioned authority, ruled that the hearing in the common pleas was limited to matters specially set out in the appeal, and framed a judgment against the county on the following statement :

| Balance due commonwealth on settlement | | | | | |
|---|---|---|---|---|---|
| of auditor general, | . | . | . | . | $301,667.89 |
| Interest from April 20, 1892, to April 20, 1893, | | | | | 18,100.07 |
| Attorney general, | . | . | . | . | 15,083.39 |

Judgment, . . . . $334,851.35

Before the judgment was formally entered, the attorney general consented to the filing of the 5th specification, raising the questions as to whether Bardsley, when he received the money, was the agent of the commonwealth, and the effect of the alleged negligence of the commonwealth's officers on the liability of the county. The court, following its decision, which we have, at the present term, affirmed in No. 29, May term, 1893, (No. 303, September term, 1891, of the common pleas,) in a suit between the same parties, overruled the 5th objection and entered the judgment heretofore set out. From this judgment the county appeals to this court.

All of the assignments of error except the 18th have been in substance passed upon and overruled in the case already mentioned. The 18th alleges, the court erred, in view of the evidence, in allowing interest and attorney general's commission on the balance due on settlement of the auditor general.

The 16th section of the act of 1889 directs: " That one third of the net amount of tax based on the return of property subject to taxation for state purposes . . . . that is collected and paid into the state treasury by a county . . . . shall be returned by the state treasurer to such county for its own use in payment of the expenses incurred by it in the assessment and collection of said tax."

The plain intent of the act is, that, before the county is entitled to its one third, the whole amount must be paid into the state treasury. The whole amount of tax to be paid into the state treasury for 1891 was $828,909.36; the one third of this is $276,303.12; of this whole amount, the county actually paid into the state treasury $527,241.47, leaving, unpaid, $301,667.89; if this had also been paid in, the county would have been entitled to an immediate return of $276,303.12; and the commonwealth would have retained for her own use $25,364.77. The court below entered judgment against the county for the full amount of the balance due at settlement,

$301,667.89, and, in addition, interest on the whole balance, $18,100.07, and attorney general's commission on the whole balance, $15,083.39.

We think the computation of interest and attorney general's commission against the county on the whole balance does more than equity to the commonwealth. Many of the circumstances calling for a modification of the judgment in No. 303, September term, 1891, are absent in this case ; the defaulting county treasurer was in office not five months of the year 1891 ; the neglect of the commonwealth's officers to enforce quarterly returns and payments could only relate to a single quarter of that year, and whatever loss may have resulted to the county from the preceding year's laxity cannot be carried forward and imputed to the commonwealth the next year ; for eight months after Bardsley was out of office the county had opportunity for investigation and ascertainment of its exact liability. Nevertheless, it chose to contest by appeal payment of the whole balance settled against it, and for that reason ought to pay such interest and commissions as the commonwealth can equitably demand. The act of 1811, however, by express terms confers equitable powers on the auditor general in making the settlement, and although, by the mere fact of appeal, questions of interest and commissions become new matters of adjudication for the court, they are to be imposed according to "law and equity " as if they had been part of the settlement. Then, why, in view of the hardship of this case, should the commonwealth have interest on $301,667.89, when only $25,364.77 was actually hers ? If the whole sum had been paid, it was her duty to at once return to the county all of it except this comparatively small part; she could not legally have used more if it had been paid, therefore she lost no interest by its nonpayment. If the county had paid immediately after the settlement the $25,364.77, would the commonwealth have brought suit against the county for $276,303.12, added interest and commissions for the mere purpose of paying the principal back to the county? If such suit had been brought, would equity have added the additional penalties ? The conclusiveness of the settlement is conceded ; the technical right of the commonwealth at law, to collect the exact balance shown by the settlement, cannot be denied, but the equity in imposing a penalty upon the county

for not handing over to the commonwealth $276,303.12 to be immediately handed back to the county, it seems to us, does not follow, therefore we modify the judgment thus:

| | |
|---|---:|
| Balance on settlement,     .     .     .     . | $301,667.89 |
| Interest from April 20, 1892, to October 2, 1893, on $25,364.77 commonwealth's share of balance, .     .     .     .     . | $2,156.73 |
| Attorney general on $25,364.77,     .     . | $1,268.24 |
| Amount of judgment to be entered, | $305,092.86 |

of which $276,303.12 is to be returned to the county.

To this extent the 18th assignment of error is sustained; all the other assignments of error are overruled, and the judgment of the court below, as modified, is affirmed.